MICHAEL J. MCKLEROY, JR.
SBN  24000095
ELIZABETH A. MAZZARELLA
SBN 24069320
AKERMAN SENTERFITT LLP
2001 Ross Avenue, Suite 2550
Dallas, TX 75201
Telephone:  214.720.4300
Facsimile:  214.981.9339

ATTORNEYS FOR DEFENDANTS
BANK OF AMERICA, N.A., BAC
HOME LOANS SERVICING, LP, AND
FEDERAL NATIONAL MORTGAGE
ASSOCIATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## DALLAS DIVISION

| | | |
|---|---|---|
| LUPTON CHAD WOODSON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No.: 3:11-cv-00421-O |
| BANK OF AMERICA, N.A., BAC | § | |
| HOME LOANS SERVICING, LP and | § | |
| FEDERAL NATIONAL MORTGAGE | § | |
| ASSOCIATION, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

## PLAINTIFF'S SECOND AMENDED COMPLAINT

## FOR FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

Page

MICHAEL J. MCKLEROY, JR. ........................................................................... 1

SBN  24000095 ................................................................................................... 1

ELIZABETH A. MAZZARELLA ........................................................................ 1

SBN 24069320 ..................................................................................................... 1

AKERMAN SENTERFITT LLP .......................................................................... 1

2001 Ross Avenue, Suite 2550 ............................................................................. 1

Dallas, TX 75201 ................................................................................................. 1

Telephone:  214.720.4300 ................................................................................... 1

Facsimile:   214.981.9339 ................................................................................... 1

ATTORNEYS FOR DEFENDANTS .................................................................... 1

BANK OF AMERICA, N.A., BAC ...................................................................... 1

HOME LOANS SERVICING, LP, AND ............................................................. 1

FEDERAL NATIONAL MORTGAGE ............................................................... 1

ASSOCIATION ..................................................................................................... 1

IN THE UNITED STATES DISTRICT COURT ................................................. 1

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS .................. 1

TABLE OF CONTENTS ........................................................................................ i

Page    i

TABLE OF AUTHORITIES ............................................................................... iii

I.      SUMMARY OF THE ARGUMENT ........................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .............................. 2

III.    LEGAL STANDARD .............................................................................. 3

IV.     ARGUMENTS AND AUTHORITIES .................................................... 4

A.  Woodson's Attempt to Plead a Breach of Contract Claim Fails as a Matter of Law. ................................................................................................. 4

    1.  Woodson Cannot Use Alleged Oral Promises as a Basis for His Breach of Contract Claim. .......................................................... 4

        b.  The Alleged Promise is Unenforceable Under the Statute of Frauds ............................................................................ 6

    2.  Woodson's Claim BAC Breached the Reinstatement Agreement is Unsupported by the Facts Alleged. ............................................ 8

    3.  Woodson's Claim of Waiver Fails Under the Terms of the Deed of Trust. ................................................................................ 8

    4.  Neither the Deed of Trust, Nor the UCC, Support a Claim for Breach of the Duty of Good Faith and Fair Dealing. ................................ 10

    5.  Woodson Does Not Plead an Anticipatory Breach of Contract Claim, Despite the Heading Suggesting So. .............................. 11

B.  Woodson Failed to Adequately Plead an Unreasonable-Collection-Efforts Claim. ......................................................................................... 13

C.  Woodson's Claim for Violation of the TDCA, And Attempt to Collect Damages Under the DTPA, Fails to State a Claim. ............................... 15

    1.  Woodson Failed to Plead a Plausible Section 392.304(a)(19) Claim. ................................................................................ 15

    2.  Woodson Failed to Plead a Plausible Section 392.304(a)(8) Claim. ......... 16

    3.  Woodson Failed to Plead a Plausible Section 392.303(a)(2) Claim. ......... 16

    4.  Woodson Failed to Plead a Plausible Section 392.301(a)(8) Claim. ......... 17

    5.  Woodson Cannot Establish "Consumer" Status to Maintain a DTPA Claim. ......................................................................... 18

D.  Woodson Failed to Show Right to Accounting. .................................... 19

E.  Woodson's Negligent Misrepresentation Claim Fails For Lack of An Actionable Representation. ................................................................ 19

F.  Woodson's Gross Negligence Claim is Barred By the Economic Loss Rule. ............................................................................................ 20

G.      Woodson Failed To State A Plausible Claim For Declaratory Judgment. ........... 22

H.      Woodson Failed to State a Quiet Title and Trespass to Try Title Claim. ............. 22

V.      CONCLUSION .................................................................................................................... 24

AKERMAN SENTERFITT, LLP ....................................................................................................... 25

2001 Ross Avenue, Suite 2550 ....................................................................................................... 25

Telephone: 214.720.4300 ................................................................................................................ 25

**ATTORNEYS FOR DEFENDANTS** ....................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................................................... 25

## TABLE OF AUTHORITIES

Page

**Cases**

*Aetna LIfe INs. Co. v. Haworth,*
    300 U.S. 227 (1937)..................................................................................... 22

*Amarillo Nat'l Bank v. Terry,*
    658 S.W.2d 702 (Tex. App.—Amarillo 1983) ...................................................... 21

*Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex. 1987)..................................... 10

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009)............................................................................... 3, 17

*Bank of North America v. Bell,*
    493 S.W.2d 633 (Tex. Civ. App.—Houston [14th Dist.] 1973)................................... 14

*Bank of Texas, N.A. v. Gaubert,*
    286 S.W.3d 546 (Tex. App.—Dallas 2009)........................................................... 7

*BCY Water Supply Corp. v. Residential Invs., Inc.,*
    170 S.W.3d 596 (Tex. App.—Tyler 2005) ......................................................... 20

*Bell Atlantic v. Twombly,*
    127 S. Ct. 1955 (2007).............................................................................. 3, 13

*Blanche v. First Nationwide Mortgage Corp.,*
    74 S.W3d 444 (Tex. App.—Dallas 2002)........................................................... 21

*Bracken v. Haid & Kyle, Inc.*, 589 S.W.2d 501 (Tex. Civ. App.—Dallas 1979,
    writ ref'd n.r.e.) ......................................................................................... 23

*Burnette v. Wells Fargo Bank, N.A.,*
    09-cv-370, 2010 WL 1026968 (E.D. Tex. Feb. 16, 2010)........................................... 7

*Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,*
    29 S.W.3d 282 (Tex. App.—Houston [14th Dist.] 2000)......................................... 21

*Cole v. Hall*, 864 S.W.2d 563 (Tex. App.—Dallas 1993, writ dism'd w.o.j.) .............................. 11

*Cole v. U.S. Bank National Assoc.*, No. H-11-2325, 2011 WL 3651029, at *1
    (S.D. Tex. August 17, 2011) ........................................................................ 18

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000) ........................................................................ 3

*Connell v. Rosales,*
    419 S.W.2d 673 (Tex. Civ. App.—Texarkana 1967) ............................................ 13

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED**        **PAGE iv**
**COMPLAINT FOR FAILURE TO STATE A CLAIM**
Civil Action No.: 4:11-cv-00421; *Lupton Chad Woodson v. Bank of America, N.A., et al.*

*Davis v. Farm Bur. Bank, FSB,*
    No. 07-CA-967, 2008 WL 1924247 (W.D. Tex. Apr. 30, 2008) .......................................... 14

*DeLoach v. Woodley,*
    405 F.2d 496 (5th Cir. 1968) ............................................................................................ 24

*Deuley v. Chase Home Finance LLC,*
    No. 4:05-CV-4253, 2006 WL 1155230 (S.D. Tex. April 26, 2006)........................................ 6

*EMC Mortgage Corp. v. Jones,*
    252 S.W.3d 857 (Tex. App.—Dallas 2008)........................................................................ 13

*Ennis Bus. Forms, Inc. v. Gehrig,*
    534 S.W.2d 183 (Tex. Civ. App. — Waco 1976)................................................................ 12

*Fillion v. David Silvers Co.,*
    709 S.W.2d 240 (Tex. App.—Houston [14th Dist.] 1986).................................................. 23

*Fix v. Flagstar Bank, FSB,*
    242 S.W.3d 147 (Tex. App.—Fort Worth 2007)................................................................ 18

*Florey v. Estate of McConnell,*
    212 S.W.3d 439 (Tex. App.—Austin 2006) ...................................................................... 23

*Foley Newsom Oil Co. v. Crawford,*
    515 S.W.2d 750 (Tex. Civ. App.—Houston [14th Dist.] 1974)............................................ 14

*Fricks v. Hancock,* 45 S.W.3d 322 (Tex. App. – Corpus Christi 2001) ...................................... 23

*G.H. Bass & Co. v. Dalsan Props—Abilene,*
    885 S.W.2d 572 (Tex. App.—Dallas 1994).......................................................................... 9

*Garcia v. Karam,*
    276 S.W.2d 255 (Tex. 1955)............................................................................................... 6

*Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009) ........................................................................ 5

*Guidry v. Bank of LaPlace,*
    954 F.2d 278 (5th Cir. 1992) ............................................................................................ 18

*Katz v. Rodriguez,*
    563 S.W.2d 627 (Tex. App.—Corpus Christi 1977) .......................................................... 22

*Key v. Pierce,*
    8 S.W.3d 704 (Tex. App.—Fort Worth 1999)..................................................................... 20

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED**       **PAGE v**
**COMPLAINT FOR FAILURE TO STATE A CLAIM**
Civil Action No.: 4:11-cv-00421; *Lupton Chad Woodson v. Bank of America, N.A., et al.*

*La Sara Grain Co. v. First Nat'l Bank of Mercedes*,
  673 S.W.2d 558 (Tex. 1984)...........................................................................18

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) ...........................................................................3

*Maginn v. Norwest Mortg., Inc.*,
  919 S.W.2d 164 (Tex. App.—Austin 1996) ......................................................19

*Marketic v. U.S. Bank Nat'l Assoc.*,
  436 F. Supp. 2d 842 (N.D. Tex. 2006) .............................................................18

*McDonald v. Bennett*,
  674 F.2d 1080 (5th Cir. 1982) .........................................................................13

*McKenzie v. Farr,* 541 S.W.2d 879 (Tex. Civ. App.—Beaumont 1976) .....................12

*Mendoza v. American Nat'l Ins. Co.*,
  932 S.W.2d 605 (Tex. App.—San Antonio 1996)...............................................18

*Michael v. Dyke*,
  41 S.W.3d 746 (Tex. App.—Corpus Christi 2001) .............................................19

*Mitchell v. Chase Homes Finance LLC*,
  No. 3:06-CV-2099-K, 2008 WL 623395 (N.D.  Tex. Mar. 4, 2008)....................14

*Montgomery Ward & Co. v. Brewer*,
  416 S.W.2d 837 (Tex. Civ. App.—Waco 1967)...................................................13

*Motor Vehicle Board of the Texas Department of Transportation v. El Paso
  Independent Automobile Dealers Association, Inc.*,
  1 S.W.3d 108 (Tex. 1999)............................................................................9, 10

*Narvaez v. Wilshire Credit Corp.*,
  No. 3:10-cv-00179, 2010 WL 5368702 (N.D. Tex. Dec. 29, 2010)................12, 13

*Patterson v. Long Beach Mortgage Co.*, No. 3:07-CV-1602, 2009 WL 4884151,
  at *7 (N.D. Tex. 2009) ...................................................................................11

*Porter v. Countrywide Home Loans, Inc.*,
  No. V-7075, 2008 WL 2944670 (S.D. Tex. July 24, 2008)..................................19

*Prospect High Income Fund v. Grant Thornton, LLP*
  203 S.W.3d 602 (Tex. App.—Dallas 2006).......................................................21

*Reliable Consultants, Inc. v. Earle*,
  517 F.3d 738 (5th Cir. 2008) ...........................................................................3

*Riverside Nat'l Bank v. Lewis*,
603 S.W.2d 169 (Tex. 1980)..................................................... 18

*Scanlan v. Tex. A & M Univ.*,
343 F.3d 533 (5th Cir. 2003) ................................................... 3

*Schuhart v. Chase Home Fin., L.L.C.*,
05-cv-385, 2006 WL 1897263 (S.D. Tex. July 10, 2006) ....................... 7

*Solar Soccer Club v. Prince of Peace Lutheran Church of Carrollton*,
234 S.W.3d 814 (Tex. App.—Dallas 2007)..................................... 9

*T.F.W. Mgmt, Inc. v. Westwood Shores Prop. Owners Ass'n*,
79 S.W.3d 712 (Tex. App.—Houston [14th Dist.] 2002)....................... 19

*Taylor v. Books A Million, Inc.*,
296 F.3d 376 (5th Cir. 2002) ................................................... 3

Tᴇx. Bᴜs. Cᴏᴍ. Cᴏᴅᴇ § 1.304.................................................... 11

*Trans-Gulf v. Performance Aircraft Servs.*,
82 S.W.3d 691 (Tex. App.—Eastland 2002) ................................... 21

*Triton Commercial Properties, Ltd. v. Northwest Bank Texas*, N.A.,
1 S.W.3d 814 (Tex. App.–Corpus Christi 1999) ............................. 7, 8

*VRC LLC v. City of Dallas*, 460 F.3d 607 (5th Cir. 2006)........................ 22

*Wachovia Bank, Nat. Ass'n. v. Schlegel*,
09-cv-1322, 2010 WL 2671316 (N.D. Tex. June 30, 2010)..................... 7

*Wall v. Carrell*,
894 S.W.2d 788 (Tex. App.—Tyler 1994) ..................................... 22

*White v. Mellon Mortgage Co.*, 995 S.W.2d 795 (Tex. App.—Tyler 1999, no pet.) ................... 11

*Willoughby v. Jones*,
151 Tex. 435, 251 S.W.2d 508 (1952)........................................ 23

*Wright v. Matthews*,
26 S.W.3d 575 (Tex. App.—Beaumont 2000) ................................. 23

*Zurich American Ins. Co. v. Hughes, Watters & Askanase, L.L.P.*,
No. 11-05-44-CV, 2006 WL 1914689 (Tex. App.—Eastland July 13, 2006)....... 21

**Statutes**

TEX. BUS. COM. CODE § 9.109(d)(11) ........................................................................... 11

TEX. FIN CODE § 392.301(b) ........................................................................................... 18

Texas Business & Commerce Code Annotated Section 26.02 .......................................... 6

Texas Business & Commerce Code Annotated Section 26.02(b) ............................... 6, 7

Texas Business & Commerce Code Section 17.45(1) ..................................................... 18

Texas Business & Commerce Code Section 17.45(2) ..................................................... 18

Texas Business & Commerce Code Section 17.45(4) ..................................................... 18

Texas Financial Code Annotated Section 392.301(a)(8) ................................... 15, 17, 18

Texas Financial Code Annotated Section 392.303(a)(2) ................................... 15, 16, 17

Texas Financial Code Annotated Section 392.304(19) .................................................. 15

Texas Financial Code Annotated Section 392.304(a)(8) ........................................ 15, 16

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 1, 3

# I.   SUMMARY OF THE ARGUMENT

Defendants Bank of America, N.A. ("BANA"), individually and as successor by merger to BAC Home Loans Servicing ("BAC"), and Federal National Mortgage Association ("FNMA") (collectively "Defendants") move to dismiss Plaintiff Lupton Chad Woodson's ("Woodson") Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Near the end of ten pages of "facts," Woodson admits that, by March 1, 2010, his loan was reinstated, no foreclosure sale had occurred or was pending, and his request for a loan modification had been denied.  Then, in the most conclusory fashion, Woodson alleges "BAC continued to mislead [him] over the next several months about the loan modification, always assuring [him] that it would not foreclose while his loan modification was under review," but then foreclosed on September 7, 2010.

Despite the lack of factual support, Woodson brings claims for breach of contract and anticipatory breach of contract, unreasonable collection efforts, violation of the Texas Debt Collection Act ("TDCA"), negligent misrepresentation, gross negligence, declaratory relief, and suit to quiet title and trespass to try title.  Woodson's breach of contract claim boils down to an alleged oral promise not to foreclose while Woodson was being considered for a loan modification.  Aside from the lack of any factual support, this claim—even if properly pleaded—fails because such oral promise is unenforceable.  In addition, Woodson's assertion that the contract was breached because Defendants waived their right to foreclose, fails under the terms of the Deed of Trust.  Finally, Woodson's claim that the contract was breached because Defendants breached a duty of good faith and fair dealing fails as a matter of law.

Woodson also fails to plead a plausible claim for unreasonable collection efforts because his allegations are woefully short of showing an intentional course of harassment occurred.

Similarly, his claim for violation of the TDCA fails for lack of factual support.  His negligent misrepresentation claim fails for lack of an actionable misrepresentation, and his gross negligence claim is barred by the economic loss rule.  Lastly, Woodson's claim for suit to quiet title and trespass to try title fails to offer any support to suggest his claim to title is superior.  Because Woodson's third attempt at stating a plausible claim for relief fails, it should be dismissed with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Woodson alleges he executed two promissory notes, secured by deeds of trust, to purchase the property located at 6417 Marquita Avenue, Dallas, Texas 75214 (the "Property").[1] Woodson alleges he suffered financial hardship beginning in December of 2008 and contacted BAC in hopes of lowering his monthly payments.[2]  Ultimately, Woodson's loan modification application was denied, and he admits to receiving a letter dated February 19, 2010 stating the same.[3]  A few days later Woodson alleges he "paid the full amount [stated in a reinstatement letter from BAC dated February 22, 2010] to reinstate his note" and a foreclosure scheduled for March 2, 2010 was canceled.[4]  Woodson states he then received a letter dated March 1, 2010 informing him his request for a loan modification had again been denied.[5]  Woodson claims BAC told him to reapply for a loan modification, but nowhere does he state that he actually did.  In fact, no additional facts are provided for the months of April through August 2010.  Woodson states unbeknownst to him, the property sold on September 7, 2010 at a foreclosure sale.

---

[1] *See* Plaintiff's Second Amended Complaint ("Amend. Comp.") ¶¶ 8-10.  *See* Deed of Trust, which is a publicly recorded and judicially noticeable document, incorporated by reference into Woodson's pleadings by reference, attached as **APPENDIX EXHIBIT A**, to Docket Entry No. 12-2.

[2] *Id*. ¶ 11.

[3] *Id*. ¶ 22.

[4] *Id*. ¶¶ 23 and 25.

[5] *Id*. ¶ 25.

Defendants removed to federal court based upon diversity jurisdiction. Woodson amended his complaint twice, and the second amended complaint is at issue here.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." In deciding a motion to dismiss, a court accepts all well-pleaded facts as true and views them in the light most favorable to the claimant. *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). A formulaic recitation of the elements, because of its conclusory nature, is not entitled to the usual presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). A plaintiff must instead plead facts, and those facts "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 127 S. Ct. 1955, 1964–65 (2007). In deciding a motion to dismiss, a court may consider not only the allegations made in the plaintiff's complaint, but also any documents incorporated in the pleading and all matters of which judicial notice may be taken. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996). All documents referred to in the plaintiff's petition, and which are central to the plaintiff's action, are considered "incorporated in the pleading." *See Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–90 (5th Cir. 2000) ("[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or] her claim.").

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**         PAGE **3** of 24
**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**
Civil Action No.: 4:11-cv-00421; *Lupton Chad Woodson v. Bank of America, N.A., et al.*

## IV.   ARGUMENTS AND AUTHORITIES

Woodson brings causes of action for breach of contract/anticipatory breach of contract, unreasonable collection efforts, violation of the TDCA/DTPA, negligent misrepresentation, gross negligence, suit to quiet title and trespass to try title, and request for declaratory relief. Woodson's claims should be dismissed with prejudice for the reasons detailed below.

**A.      Woodson's Attempt to Plead a Breach of Contract Claim Fails as a Matter of Law.**

Woodson's claim for "breach of contract/anticipatory breach of contract" is based on four theories.[6]   First, despite admitting receipt of notice of default, opportunity to cure and opportunity to reinstate, Woodson alleges BAC "violated the Texas Property Code and breached the Deed of Trust contract" by verbally telling Woodson to "ignore" the notices.[7]   Second, Woodson alleges BAC breached the agreement to reinstate the Note.[8]   Third, Woodson alleges BAC "waived their right under the Deed of Trust contract to foreclose."[9]   And fifth, Woodson claims BAC breached the requirement of good faith and fair dealing found in the contract as well as imposed by the Uniform Commercial Code ("UCC").[10]   However, not one of these theories support Woodson's claim for breach of contract, and it should be dismissed as a matter of law.

**1.      Woodson Cannot Use Alleged Oral Promises as a Basis for His Breach of Contract Claim.**

a.      <u>Woodson Fails to Plead Sufficient Facts to Support Existence or Breach of Oral Promise.</u>

By admitting BAC provided the notices required by the Deed of Trust but "told [Woodson] to ignore" them, Woodson's breach of contract claim seeks to enforce an oral promise, not a provision of the parties' written contract.   Other than this bare assertion of the

---

[6]  *Id.* ¶ 30.
[7]  *Id.*
[8]  *Id.* 32.
[9]  *Id.* ¶ 31
[10]  *Id.*

existence of unspecified verbal representations, as well as the conclusory assertion that BAC was "always assuring [Woodson] that it would not foreclose while his loan modification was under review," Woodson alleges no actual "facts" upon which this claim may be founded.

The overarching question is whether Woodson pleaded sufficient facts, as opposed to conclusory allegations, to plausibly suggest, or allow the court to draw a reasonable inference, that BAC made any sort of promise to Woodson. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "It follows that, 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949).

The facts Woodson state merely amount to the following: (1) Woodson reinstated the loan as of March 1, 2010; and (2) the foreclosure occurred September 7, 2010.[11] The lack of factual allegations for this time period is especially telling considering the minutiae of each conversation Woodson supposedly remembers from December of 2009 until mid February 2010. Certainly, allegations BAC "told [Woodson] to ignore" and was "always assuring [Woodson] that it would not foreclose while his loan modification was under review," are too conclusory to allow this court to draw a reasonable inference that a contract between Woodson and BAC and/or BANA was formed. Among other deficiencies, Woodson fails to identify when the alleged contract was entered into or the precise terms of the contract, including the promises made by Woodson in exchange. Woodson states his loan modification requests were denied in

---

[11] *Id.* ¶¶ 25-26.

writing on February 19, 2010 and again on March 1, 2010.[12]  Despite intimately detailing the process with which he applied for these modifications, he does not state that he even re-applied following the March 1, 2010 denial.  The facts are simply insufficient to find an oral contract existed.  Moreover, even if the Court were to conclude there were sufficient facts to plausibly suggest an oral contract was made, there are not sufficient facts to suggest it was breached.  In this case, Woodson alleges the promise was not to foreclose while he was being considered for a loan modification.  However, Woodson fails to allege he applied for any loan modification after he learned on March 1, 2010 that his prior application had been denied.  Simply put, Woodson's claim for breach of an oral agreement fails to state a plausible claim to survive dismissal.

      b.      <u>The Alleged Promise is Unenforceable Under the Statute of Frauds</u>.

However, even if Woodson did sufficiently plead the existence of an oral contract, the alleged contract identified by Woodson fails because it is barred by the Statute of Frauds.  Woodson's mortgage loan is subject to the statute of frauds because it exceeds $50,000.[13]  *See* TEX. BUS. & COM. CODE § 26.02.  Under section 26.02, a loan agreement is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.  *Id*. § 26.02(b).  When an oral agreement purports to modify an agreement that must be in writing, the modification also must be in writing or it is unenforceable.  *Deuley v. Chase Home Finance LLC*, No. 4:05-CV-4253, 2006 WL 1155230, at *2 (S.D. Tex. April 26, 2006) (citing *Garcia v. Karam*, 276 S.W.2d 255, 257 (Tex. 1955)).  Accordingly, oral promises to modify a mortgage are not enforceable under the statute of frauds unless the plaintiff shows "the promisor promised to sign a written document that would satisfy the statute of frauds."  *Burnette v. Wells Fargo Bank, N.A.*, 09-cv-370, 2010 WL 1026968, at *6–7 (E.D. Tex.

---

[12] *Id.* ¶¶ 19 and 25.

[13] Deed of Trust, incorporated into Woodson's pleadings by reference, attached as **APPENDIX EXHIBIT A**.

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**              **PAGE 6 of 24**
**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**
Civil Action No.: 4:11-cv-00421; *Lupton Chad Woodson v. Bank of America, N.A., et al.*

Feb. 16, 2010), report and recommendation adopted, 2010 WL 1026969 (Mar. 17, 2010); *accord Wachovia Bank, Nat. Ass'n. v. Schlegel*, 09-cv-1322, 2010 WL 2671316, at *4 (N.D. Tex. June 30, 2010); *Schuhart v. Chase Home Fin., L.L.C.*, 05-cv-385, 2006 WL 1897263, at *4 (S.D. Tex. July 10, 2006); *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 555 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.).

Pursuant to the Statute of Frauds, the alleged promise to not foreclose relied upon by Woodson is required to be in writing to be enforceable. *See* TEX. BUS. & COM. CODE § 26.02(a)(2), (b). An argument similar to that advanced by Woodson was made, and rejected, in *Bank of Texas, N.A. v. Gaubert*, 286 S.W.3d 546 (Tex. App.—Dallas 2009, pet. dism'd). In *Gaubert*, Gaubert financed the construction of a spec house with a short-term bridge loan from Bank of Texas. *Gaubert*, 286 S.W.3d at 548. The loan matured within six (6) months of origination, during which time the parties understood that Gaubert would line up permanent financing to payoff the short-term loan. *Gaubert*, 286 S.W.3d at 549. Gaubert, however, claimed that he was promised by Bank of Texas, both before and after the maturity date had expired, that, if he had not obtained permanent financing by the maturity date, the short-term loan would be extended to allow him additional time to do so. *Id*. When Bank of Texas did not enter into such an agreement to extend the short-term loan and, instead, proceeded to foreclosure, Gaubert sought to enforce the oral promise he alleged was made by Bank of Texas that it would not foreclose. *Gaubert*, 286 S.W.3d at 556. The Dallas Court of Appeals held such a promise was unenforceable. *Id*.

In rejecting Gaubert's claims, the Court specifically rejected Gaubert's reliance upon *Triton Commercial Properties, Ltd. v. Northwest Bank Texas*, N.A., 1 S.W.3d 814, 818 (Tex. App.–Corpus Christi 1999, pet. denied). The rejection of *Triton* is particularly significant to this

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**
Civil Action No.: 4:11-cv-00421; *Lupton Chad Woodson v. Bank of America, N.A., et al.*

PAGE **7** of 24

case because, like Woodson, *Triton* had sought to enforce the alleged oral agreement to extend time for payment as a "waiver" of the right to foreclose. *Triton*, 1 S.W.3d at 816-17. In other words, whether couched in terms of an oral waiver or an oral modification, Woodson cannot avoid the application of the Statute of Frauds. Here, Woodson makes no allegations that BAC promised to sign a written document modifying the terms of the Deed of Trust. Woodson's claim for breach of an alleged oral contract is therefore barred by the statute of frauds.

### 2. Woodson's Claim BAC Breached the Reinstatement Agreement is Unsupported by the Facts Alleged.

In passing, Woodson argues "Defendants breached the [reinstatement] agreement by failing to reinstate his note."[14] Although the allegation is not entirely clear, Woodson appears to assert the fact the foreclosure occurred on September 7, 2010 is evidence BAC breached the reinstatement agreement. Just as stated in section IV(A)(1)(a) above, the time period from when Woodson reinstated the note until the foreclosure sale is completely devoid of any factual allegations. There are simply no facts alleged to suggest BAC took any action to breach the reinstatement agreement and such a theory does not support a claim for breach of contract.

### 3. Woodson's Claim of Waiver Fails Under the Terms of the Deed of Trust.

Next, Woodson argues BAC waived their right to accelerate the debt and sell the Property.[15] Woodson provides no explanation for this conclusory statement. However, this claim fails because Woodson expressly agreed such actions would not constitute a waiver. In the Deed of Trust[16] executed by Woodson, he expressly agreed:

> Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or

---

[14] Amend. Comp. ¶ 32.
[15] Amend. Comp. ¶ 33.
[16] **APPENDIX EXHIBIT A**.

Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.[17]

Because Woodson contractually agreed that the failure to exercise the remedies of acceleration and foreclosure would not constitute a waiver of the right to later exercise accelerate and foreclose Woodson's claim fails as a matter of law.[18] *See e.g., Solar Soccer Club v. Prince of Peace Lutheran Church of Carrollton*, 234 S.W.3d 814, 823 (Tex. App.—Dallas 2007, pet. denied) (affirming summary judgment which claimed, in part, that "no waiver" clause in lease permitted suit on later breaches even if plaintiff did not sue on earlier breaches).

Notwithstanding Woodson's contractual agreement with regard to waiver, Woodson misunderstands waiver under Texas law. Waiver is not, as seems to be implied by Woodson, a remedy for allegedly inequitable conduct. Waiver is the intentional relinquishment of a known right. Woodson makes no allegations which can support a claim any of the Defendants waived, or intended to waive, the right to accelerate or foreclose. Instead, Woodson's affirmative allegations the loan was accelerated and the lien foreclosed evidence a contrary intent.

In Texas, "[t]he elements of waiver are: (1) an existing right, benefit or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct)." *G.H. Bass & Co. v. Dalsan Props—Abilene*, 885 S.W.2d 572, 577 (Tex. App.—Dallas 1994, no writ). "Waiver is largely a matter of intent," *Motor Vehicle Board of the Texas Department of Transportation v. El Paso Independent Automobile Dealers Association, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999), but "[t]he law on waiver distinguishes between a showing of intent by actual renunciation and a showing of intent based on inference." *G.H. Bass*, 885 S.W.2d at 577. Where waiver is based on inference, "it is the burden of the party

---

[17] *Id*. ¶ 12; *see also* ¶ 1.

[18] To the extent Woodson may argue BANA and/or BAC are not the "lender" under the Loan he has specifically alleged he executed two notes and security agreements in favor of Defendants. *See* Amend. Comp. ¶ 10.

who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party 'unequivocably[sic] manifested' its intent to no longer assert its claim."  *Id.*; *see also Motor Vehicle Board*, 1 S.W.3d at 111 ("for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances.").

Here, Woodson does not allege BAC expressly stated its intent to waive the right to accelerate or foreclose.  So for his claim of waiver "to withstand the present motion to dismiss, [Woodson] must allege some facts that, if true, would allow the court to reasonably infer that the defendants 'unequivocally manifested' an intent to waive" these rights.  *Wigginton*, No. 3:10-CV-2128, 2011 WL 2669071, at *4 (N.D. Tex. July 7, 2011).  Woodson does not do so; in fact, the evidence shows, to the contrary, BAC fully intended to exercise its right to foreclose due to Woodson's failure to repay his note according to the written terms.  Woodson's claims do not state a plausible claim for waiver and, therefore, to the extent his breach of contract claim, or any other claim, relies upon the alleged waiver, it must be dismissed.

### 4.    Neither the Deed of Trust, Nor the UCC, Support a Claim for Breach of the Duty of Good Faith and Fair Dealing.

Under his Breach of Contract heading, Woodson states "[t]he requirement of good faith and fair dealing is included in the performance of every contract."[19]  However, such a duty does not exist in all contractual relationships at common law unless: (1) intentionally created by express language in a contract; or (2) a special relationship of trust and confidence exists between the parties to the contract.  *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987).  Here, the Deed of Trust does not expressly provide for a duty of good faith and fair dealing.  Nor is there a special relationship between a lender and a borrower necessary to imply a duty of good faith and fair dealing.  *Patterson v. Long Beach Mortgage Co.*, No. 3:07-

---

[19] Amend. Comp. ¶ 31.

CV-1602, 2009 WL 4884151, at *7 (N.D. Tex. 2009) (citing *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App.—Dallas 1993, writ dism'd w.o.j.)); *see also White v. Mellon Mortgage Co.*, 995 S.W.2d 795, 800 (Tex. App.—Tyler 1999, no pet.) ("[T]he relationship between a mortgagor and a mortgagee does not give rise to a duty of good faith.").  Thus, the claim should be dismissed because it fails as a matter of law.  Moreover, Woodson's attempt to enforce this duty through the UCC fails for two reasons.  First, as section 1.304 of the UCC makes clear, "this section does not support an independent cause of action for failure to perform or enforce in good faith" or "create a separate duty of fairness and reasonableness which can be independently breached." TEX. BUS. COM. CODE § 1.304, cmt. 1.  Instead, it merely means the failure to perform or enforce a contractual obligation subject to the UCC in good faith may give rise to a claim for breach of that obligation.  *Id.*  Here, Woodson alleges only that BAC "had a duty of good faith and fair dealing…under the note but…violated that requirement because they deliberately, or negligently, accelerated the note and foreclosed."[20]  Even assuming this was sufficient to state a claim for breach of good faith and fair dealing, which Defendants do not concede, Woodson fails to allege any facts showing how "Defendants' actions" were not done in good faith.  Second, Woodson claims Defendants breached the Deed of Trust when they exercised the power of sale.[21]  However, the Deed of Trust is not governed by the UCC.  *See* TEX. BUS. COM. CODE § 9.109(d)(11).  As such, any alleged breach of the note according to the UCC, even if Woodson properly states one, does not provide a basis to sue for breach of the Deed of Trust.

**5.      Woodson Does Not Plead an Anticipatory Breach of Contract Claim, Despite the Heading Suggesting So.**

---

[20] Amend. Comp. ¶ 31.
[21] *Id.*

Lastly, despite Woodson's heading titled anticipatory breach of contract, he makes no other reference to an anticipatory breach of contract claim.  Such an allegation was found wanting in *Narvaez v. Wilshire Credit Corp.*, No. 3:10-cv-00179, 2010 WL 5368702 (N.D. Tex. Dec. 29, 2010).  In *Narvaez*, the defendant brought a motion for summary judgment on this claim arguing the plaintiff lacked any evidence.  *Narvaez*, 2010 WL 5368702, at *8.  The court, however, determined the defendant had not met its summary judgment burden and, instead, evaluated the defendant's challenges to the sufficiency of the plaintiff's allegations "much the same as a 12(b)(6) motion to dismiss."  *Id.*  The court concluded, much as this Court should conclude, "none of Defendants' words or actions positively and unconditionally demonstrated an intent to abandon their obligations under the deed of trust."  *Id.*  The court explained that:

> "An anticipatory repudiation of a contract may consist of either words or actions by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms.  The declaration of intent to abandon the obligation must be in positive and unconditional terms.  It is not sufficient if a party makes a genuine mistake or endures a misunderstanding as to matters of fact or law that causes that party not to comply with its obligations.  Rather, the party must recognize its duties but refuse to perform them."

*Id.* (internal citations omitted).[22]

---

[22] Under Texas law, Woodson must show Defendants evidenced a fixed intention not to comply with the terms of the contract in the future.  *Ennis Bus. Forms, Inc. v. Gehrig,* 534 S.W.2d 183, 189 (Tex. Civ. App. — Waco 1976, writ ref'd n.r.e.); *see also McKenzie v. Farr,* 541 S.W.2d 879, 881 (Tex. Civ. App.—Beaumont 1976, writ ref'd n.r.e.).

Like Woodson's waiver claim, not only does he fail to allege any facts that Defendants' words or actions positively and unconditionally demonstrated an intent to abandon their remaining obligations under the Deed of Trust, the fact they actually did foreclose demonstrates the contrary. Like *Narvaez*, Woodson's rote pleading for anticipatory repudiation fails to state a claim and must be dismissed. *See also Twombly,* 127 S. Ct. at 1965 (holding claims must provide "more than labels and conclusions").

For all of these reasons, Woodson's third attempt at pleading a breach of contract claim fails as matter of law and fact, and dismissal is warranted.

## B.  Woodson Failed to Adequately Plead an Unreasonable-Collection-Efforts Claim.

Woodson has not shown he is entitled to relief for defendants' alleged "unreasonable collection efforts."[23]   Although the precise elements of an unreasonable-collection-efforts claim are uncertain—largely due to the fact that the TDCA governs "unreasonable collection efforts" now—, at a minimum the facts supporting such a claim must indicate the defendant engaged in conduct "that amount[s] to [(1)] a course of harassment that [(2)] was willful, wanton, malicious, and [(3)] intended to inflict mental anguish and bodily harm." *EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.) (internal quotation marks omitted); *accord Connell v. Rosales*, 419 S.W.2d 673, 676 (Tex. Civ. App.—Texarkana 1967, no writ); *Montgomery Ward & Co. v. Brewer*, 416 S.W.2d 837, 844 (Tex. Civ. App.—Waco 1967, writ ref'd n.r.e).   As a general rule, "mental anguish alone is insufficient to sustain a recovery of damages, at common law, for unreasonable collection efforts." *McDonald v. Bennett*, 674 F.2d 1080, 1088 (5th Cir. 1982).

---

[23] Amend. Comp. ¶ 37.

Woodson's few vague facts about being mislead regarding the loan modification, which state absolutely no facts detailing the seven months leading up to the actual foreclosure, do not rise to the level of a **willful course of harassment** intended to inflict psychological and physical harm on them. *Cf. Bank of North America v. Bell*, 493 S.W.2d 633, 636 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ) (holding creditor engaged in unreasonable debt collection where creditor attempted to, among other things, collect before default occurred, embarrassed borrower in front of social guests, and threatened borrower with criminal charges) (emphasis added); *Foley Newsom Oil Co. v. Crawford*, 515 S.W.2d 750, 752 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ) (finding that debt collector unreasonably collected a debt where, even after plaintiff notified collector he had paid the debt, collector called plaintiff on many occasions, and during sleeping periods, contacted plaintiff's neighbors and induced their child to provide plaintiff's phone number, threatened plaintiff's job through use of personal ties, threatened to sue plaintiff and have him put in jail, and reported the alleged debt to plaintiff's employer resulting in an extensive investigation of plaintiff).

Furthermore, Woodson has not alleged any facts, or even mentioned willful, wanton, or malicious conduct by Defendants, which is necessary to move forward on his claim. Rather, Woodson admits receiving the requisite notices of default as well as receiving multiple communications stating his modification request was denied. Merely employing a contractual right to foreclose does not constitute the type of conduct this tort aims to prevent. *See, e.g.*, *Mitchell v. Chase Homes Finance LLC*, No. 3:06-CV-2099-K, 2008 WL 623395, at *6 (N.D. Tex. Mar. 4, 2008); *see also Davis v. Farm Bur. Bank, FSB,* No. 07-CA-967, 2008 WL 1924247, at *4 (W.D. Tex. Apr. 30, 2008) (requiring "continued" debt collection activities). Woodson's

general allegations do not and cannot form this basis of an unreasonable collection efforts cause of action and the claim should be dismissed.

**C.      Woodson's Claim for Violation of the TDCA, And Attempt to Collect Damages Under the DTPA, Fails to State a Claim.**

Woodson alleges BAC violated sections 392.304(19), 392.304(a)(8), 392.303(a)(2), and 392.301(a)(8) of the TDCA because they are "debt collectors."[24]   Woodson further claims a violation of the TDCA is actionable as a deceptive act or practice under the DTPA.[25]   Neither of these claims state a claim upon which relief may be granted.

**1.      Woodson Failed to Plead a Plausible Section 392.304(a)(19) Claim.**

Woodson fails to state a claim for a violation of section 392.304(a)(19).   Section 392.304(a)(19) provides "[i]n debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices . . . using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."   While this provision is no doubt intended to be a catch-all provision of the TDCA, federal pleading rules still require Woodson to articulate sufficient facts which, if proven true, would state a claim.   In this context, Woodson must allege some "other false representation" or "deceptive means" to "collect a debt." *Id*.   Woodson has not done so.   Woodson does not put BAC on notice of his claims.   Therefore, he has not stated a plausible claim for violating section 392.304(a)(19).   Woodson's entire complaint is based upon an alleged oral promise not to foreclose while his modification application was under review. However, as discussed, his own version of the facts show BAC informed him of the denial of

---

[24] Amend. Comp. ¶ 44.
[25] *Id*. ¶ 48.

this request.  Therefore, Woodson failed to state a violation of section 392.304(a)(19) of the TDCA and this claim should be dismissed.

### 2.    Woodson Failed to Plead a Plausible Section 392.304(a)(8) Claim.

Likewise, Woodson fails to state a claim for violation of section 392.304(a)(8).  Section 392.304(a)(8) provides "[i]n debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices . . . misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."  Woodson bases this claim on allegations BAC misapplied two payments made under a trial-payment plan in 2009.[26]  Woodson's allegation is conclusory and does not support an actionable claim.  There are simply no facts upon which Woodson can base a claim that BAC misrepresented the character, extent or amount of a debt in violation of section 392.304(a)(8) and this claim should be dismissed.

### 3.    Woodson Failed to Plead a Plausible Section 392.303(a)(2) Claim.

Woodson further fails to state a claim for a violation of section 392.303(a)(2).  Section 392.303(a)(2) provides "[i]n debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices . . . attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."  Woodson alleges no facts which, taken as true, support this claim.  Nowhere in Woodson's complaint does he allege that BAC attempted to collect "interest" or a "charge," "fee"

---

[26] Amend. Comp. ¶ 45.

or "expense" "incidental to the obligation, except as expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."

In other words, it is not sufficient to simply allege BAC collected or attempted to collect money from Woodson that Woodson does not believe were owed.  To be actionable, Woodson must allege facts showing BAC violated the statute as it is written.   Here, Woodson was required, but failed, to allege BAC collected or attempted to collect interest or a charge, fee or expense incidental to the obligation and not expressly authorized by the parties' agreement or applicable law.  Simply arguing BAC misapplied payments does not support a claim under this section.  Nor is it sufficient to recite the statute without any supporting facts.  Such conclusory allegations fail to put BAC on fair notice and are merely the "unadorned, the-defendant-unlawfully-harmed-me accusation" that cannot stand 12(b)(6) scrutiny.  *Iqbal*, 129 S. Ct. at 1949.  As such, Woodson's claim for violation of section 392.303(a)(2) of the TDCA should be dismissed.


### 4.      Woodson Failed to Plead a Plausible Section 392.301(a)(8) Claim.

Woodson also fails to state a claim for a violation of section 392.301(a)(8).  Section 392.301(a)(8) provides "[i]n debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices . . . threatening to take an action prohibited by law."  Other than the allegation that BAC waived the right to enforce the Deed of Trust through a non-judicial foreclosure sale, which BAC addresses above, Woodson pleaded absolutely no facts to support this claim.  Not once in his complaint does he allege BAC threatened to take an action prohibited by law in connection with the collection of any amount

due under the loan or any other debt.  *See Cole v. U.S. Bank National Assoc.*, No. H-11-2325, 2011 WL 3651029, at *1 (S.D. Tex. August 17, 2011) (citing TEX. FIN CODE § 392.301(b)) (in dismissing claim under section 392.301(a)(8) holding "[t]hreats of foreclosure are, however, expressly permitted under the TDCPA.").  By failing to plead specific facts to support this claim, as opposed to mere conclusory allegations, Woodson's claim does not rise to the level of plausibility.  *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  BAC, consequently, are entitled to dismissal of Plaintiff's claim for violation of section 392.301(a)(8) of the TDCA for failure to state a claim.

### 5.       Woodson Cannot Establish "Consumer" Status to Maintain a DTPA Claim.

Lastly, Woodson's claim for damages via the DTPA also fails because Woodson is not a DTPA consumer.  A plaintiff must be a "consumer" in order to have standing to bring an action under the DTPA.  *Marketic v. U.S. Bank Nat'l Assoc.*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006) (citing *Mendoza v. American Nat'l Ins. Co*., 932 S.W.2d 605, 608 (Tex. App.—San Antonio 1996, no writ)).  To qualify as a consumer under the DTPA, the plaintiff must seek or acquire goods or services by purchase or lease.  Tex. Bus. & Com. Code § 17.45(4).  "Goods" are "tangible chattels or real property purchased or leased for use."  Tex. Bus. & Com. Code Ann. § 17.45(1).  "Services" constitute any "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods."  *Id.* § 17.45(2).

Borrowing money does not constitute the acquisition of a good or service.  *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566-67 (Tex. 1984); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex. 1980); *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied) (holding loan borrower was not a DTPA "consumer").  Even if a lender provides services that are incidental to the completed mortgage

loan, the performance of such services does not transform the borrower into a consumer for purposes of the DTPA. *Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164, 1667-67 (Tex. App.—Austin 1996, no writ); *Porter v. Countrywide Home Loans, Inc.*, No. V-7075, 2008 WL 2944670 at *3 (S.D. Tex. July 24, 2008) ("A borrower whose sole objective is a loan does not become a consumer merely because the lender provides services incidental to the loan that are not independent objectives of the transaction.").  Woodson lacks standing to bring an action under the DTPA because his complaint is based upon a loan of money and not a good or service. Because Woodson cannot claim consumer status, he cannot maintain a DTPA action, and it should be dismissed along with his TDCA claim.[27]

### D.      Woodson Failed to Show Right to Accounting.

Woodson also seeks an accounting.[28]  However, an "action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *See Wigginton*, 2011 WL 2669071 at *4 (citing *Michael v. Dyke*, 41 S.W.3d 746 754 (Tex. App.—Corpus Christi 2001, no pet).  Although a trial court has discretion when to order an accounting, it should only do so when the facts and accounts in issue are so complex that adequate relief cannot be obtained at law.  *Id.* (*citing T.F.W. Mgmt, Inc. v. Westwood Shores Prop. Owners Ass'n,* 79 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Because Woodson has not alleged why the information he seeks cannot be easily ascertained through discovery, his claim should be dismissed.  *Id.*

### E.      Woodson's Negligent Misrepresentation Claim Fails For Lack of An Actionable Representation.

---

[27] Any assertion "consumer" status is not required to state a claim under the TDCA tie-in provision of the DTPA is just plain wrong.  *See Marketic*, 436 F. Supp. 2d at 854-55.

[28] Amend. Comp. ¶ 50.

Based upon the misguided theories discussed above in sections A(2) and A(3), Woodson alleges BAC is liable for negligent misrepresentation.[29]  Once again, Woodson unbelievably infers that because he was told he must be in default in order to be eligible for modification then BAC instructed him to default on purpose.  And again Woodson relies on his theory he knew nothing of the foreclosure sale, despite not supplying any facts explaining what happened in the seven months leading up to the sale.  Notwithstanding these ridiculous allegations, Woodson claims he was repeatedly told his request for a loan modification was being reviewed.  Woodson does not complain this representation is false.  Woodson's complaint is that he was allegedly promised that no foreclosure would occur while the review took place.  This is simply a promise to refrain from doing a future act which is not actionable as a negligent misrepresentation.  "In a cause of action for negligent misrepresentation, the misrepresentation at issue must be one of existing fact.  A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact."  *BCY Water Supply Corp. v. Residential Invs., Inc*., 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied).  In *Key v. Pierce*, 8 S.W.3d 704, 709 (Tex. App.—Fort Worth 1999, pet. denied), the court held that a plaintiff could not base a negligent misrepresentation claim on the promise of a mortgagee to sell property to the highest bidder at a foreclosure auction because such a promise was not a misstatement of existing fact; it was instead merely a promise of future conduct.   Similarly, the alleged representations complained of by Woodson do not concern "past or existing facts."  They concern the promises of a future loan modification and promises not to foreclose.  His negligent misrepresentation claim fails as a matter of law and must be dismissed.

**F.     Woodson's Gross Negligence Claim is Barred By the Economic Loss Rule.**

---

[29] Amend. Comp. ¶ 52.

Woodson's claim for gross negligence fails to state a claim because there is no duty upon which a claim for negligence or gross negligence can be based.  *Blanche v. First Nationwide Mortgage Corp.*, 74 S.W.3d 444 (Tex. App.—Dallas 2002, no pet.); *Prospect High Income Fund v. Grant Thornton, LLP*, 203 S.W.3d 602, 609 (Tex. App.—Dallas 2006, pet. denied); *Trans-Gulf v. Performance Aircraft Servs.*, 82 S.W.3d 691, 695 (Tex. App.—Eastland 2002, no pet.) (collecting cases).  In *Blanche*, the Blanches, borrowers under a mortgage loan, sued First Nationwide, the mortgagee, alleging a cause of action of negligence.  *Blanche*, 74 S.W.3d at 452. The Blanches complained that, after a federal court had declared them to not be the owners of the subject property, First Nationwide continued to hold them liable under the mortgage by reporting them as delinquent.  *Blanche*, 74 S.W.3d at 452-53.  First Nationwide challenged the Blanches' element of damages in its negligence claim.  *Blanche*, 74 S.W.3d at 453.  The court agreed, holding "to be entitled to damages for negligence, a party must plead and prove something more than mere economic harm." *Id.*[30]  "[P]ermitting a tort recovery for purely economic loss would be a duty standard that sweeps too broadly." *Id.*  (citing *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). "Property damage" does not include loss of property rights.

Woodson alleges no harm as a result of any act or omission attributable to other than purely economic damages.  No facts in the complaint indicate Defendants actually destroyed

---

[30] In its discussion, the court specifically determined mental anguish damages were not recoverable under a claim for negligence.  *Id.*  In addition, to plead property damage, a party must show actual, physical destruction of tangible property, not merely loss of rights to property.  *See e.g.*, *Amarillo Nat'l Bank v. Terry*, 658 S.W.2d 702, 704 (Tex. App.—Amarillo 1983, no writ) (holding loss of funds did not constitute property damage because "there was no damage inflicted on, much less, a destruction of the money"); *see also Zurich American Ins. Co. v. Hughes, Watters & Askanase, L.L.P.*, No. 11-05-44-CV, 2006 WL 1914689, at *3 (Tex. App.—Eastland July 13, 2006) (holding to qualify as "property damages" "some physical destruction of tangible property must occur" (collecting cases)).

Woodson's tangible property or injured his body.  Woodson therefore has not stated a valid claim for negligence, let alone gross negligence.

## G.      Woodson Failed To State A Plausible Claim For Declaratory Judgment.

Woodson requests a declaratory judgment finding "Defendants breached the Deed of Trust . . . , Fannie Mae does not own the Note and had no standing to foreclose, that the lien is invalid, and that Defendants forfeited the principal and interest of the loan."[31]  First, the requests made by Woodson appear wholly unrelated to the facts of this case as FNMA is the purchaser of the Property at the foreclosure sale and the validity of the lien is not at issue.  Second, the Declaratory Judgment Act does not create an independent cause of action; instead it provides a form of relief.  *See, e.g.*, *Aetna LIfe INs. Co. v. Haworth*, 300 U.S. 227, 240 (1937).  Woodson's requests are remedial in nature and are dependent upon the assertion of viable causes of action. *See VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (plaintiff seeking a permanent injunction must establish, among other things, success on the merits of his claim).  To the extent Woodson tried to plead for declaratory relief, the attempt fails with the causes of action upon which Woodson purports to found it.

## H.      Woodson Failed to State a Quiet Title and Trespass to Try Title Claim.

To plead a quiet title claim, Woodson is required to base his claim solely on the strength of his own title and not on the asserted weaknesses of FNMA's title.  *See Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. App.—Corpus Christi 1977, writ ref'd n.r.e.) ("[A quiet title] claimant must base his action on the strength of his own title[.]").  "The defendant is not required to show title in [it]self, nor may the plaintiff rely on the defendant's failure to do so."  *Wall v. Carrell*, 894 S.W.2d 788, 797 (Tex. App.—Tyler 1994, writ denied).  Moreover, "[t]he plaintiff in a suit to

---

[31] Amend. Comp. ¶ 56.

quiet title must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied). A prevailing party's remedy is title to, and possession of, the real property interest at issue in the suit. *See Florey v. Estate of McConnell*, 212 S.W.3d 439, 449 (Tex. App.—Austin 2006, pet. denied). The same is true for Woodson's trespass to try title claim. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App. – Corpus Christi 2001, no pet.) ("A plaintiff in a trespass to try title suit [ ] must rely upon the strength of his own title, not upon the weakness of the defendant's.").

Woodson failed to plead the strength of his own title. Rather, he admits FNMA owns the Property and mentions he is a tenant at sufferance.[32] Indeed, this claim is merely an attempt to obtain relief from an allegedly wrongful foreclosure without tendering the amount paid by FNMA, which is required to obtain this relief. Normally, in order to obtain a rescission of a foreclosure sale, a plaintiff must tender "whatever amount is owed on the note," such a tender being "a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale." *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (citing *Willoughby v. Jones*, 251 S.W.2d 508 (Tex. 1952)); *see also White v. BAC Home Loans Servicing, LP*, No. 3:09-CV-2484, 2010 WL 4352711, at *6 (N.D. Tex. Nov. 2, 2011). When the property is sold at a foreclosure sale a plaintiff is required to tender the purchase price paid by the purchaser at the sale in order to set aside the sale. *See Bracken v. Haid & Kyle, Inc.*, 589 S.W.2d 501, 502 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.) (party seeking to set aside foreclosure sale required to tender purchase price to third-party purchaser). Woodson pleads no facts suggesting he has

---

[32] *Id.* ¶ 57.

complied with this condition precedent and, therefore, has not pleaded a claim for relief. Accordingly, Woodson's suit to quiet title and trespass to try title claims must be dismissed.

## V.   CONCLUSION

Defendants respectfully request the Court grant their motion because Woodson's claims fail as a matter of law and fact.  Woodson's third attempt at pleading a plausible claim fails.  The claims should be dismissed with prejudice as allowing Woodson to restate them would be an act of futility.  *See, e.g.*, *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968) (noting that the Federal Rules of Civil Procedure "do not require that courts indulge in futile gestures").  Because Woodson fails to state a plausible claim for relief, Defendants request dismissal with prejudice.

Date: September 30, 2011                    Respectfully submitted,


                                            */s/ Elizabeth A. Mazzarella*
                                            Michael J. McKleroy, Jr., SBN: 24000095
                                            Elizabeth A. Mazzarella, SBN: 24069320
                                            AKERMAN SENTERFITT, LLP
                                            2001 Ross Avenue, Suite 2550
                                            Dallas, Texas 75201
                                            Telephone: 214.720.4300
                                            Facsimile:  214.981.9339

                                            **ATTORNEYS FOR DEFENDANTS
                                            BAC HOME LOANS SERVICING, LP
                                            and FEDERAL NATIONAL
                                            MORTGAGE ASSOCIATION**




                        CERTIFICATE OF SERVICE

        I hereby certify that on September 30, 2011, a true and correct copy of the foregoing was
served as follows:

J.B. Peacock, Jr.
Cynthia K. Shanklin
David M. Vereeke
Gagnon, Peacock, Shanklin & Vereeke, P.C.
4245 N. Central Expressway
Suite 250, Lock Box 104
Dallas, Texas 75205
*Attorneys for Plaintiff*
**VIA THE COURT'S ELECTRONIC FILING SYSTEM**


                                            */s/ Elizabeth A. Mazzarella*
                                            Elizabeth A. Mazzarella